901 P.2d 1309

**In the Matter of Gordon W. JENKINS and John L. Stosich, Attorneys at Law**

**IDAHO STATE BAR, Plaintiff,**

v.

**Gordon W. JENKINS, John L. Stosich, Defendants.**

No. 21412.

Supreme Court of Idaho,
Boise, January 1995 Term.

May 11, 1995.

Rehearing Denied Aug. 25, 1995.

Michael J. Oths, Idaho State Bar Counsel, for plaintiff.

Dennis R. Peterson, Idaho Falls, for respondent Gordon W. Jenkins, and John L. Stosich, Idaho Falls, pro se. Gordon W. Jenkins, pro se defendant and John L. Stoisch, pro se defendant, argued.

McDEVITT, Chief Justice.

This is an attorney misconduct case based on the finding of the hearing committee of

the Professional Conduct Board of the Idaho State Bar that Gordon W. Jenkins (Jenkins) and John L. Stosich (Stosich) each violated the Idaho Rules of Professional Conduct (I.R.P.C.). The hearing committee recommended that each petitioner be suspended from the practice of law for sixty (60) days and that each be assessed costs incurred in the proceedings.

## I.

## PRIOR PROCEEDINGS

During 1986 and 1987, Matthew and Shanna Hopewell (the Hopewells) contacted the Jenkins Law Office (JLO) seeking representation on three matters, *Matt Hopewell v. Steele Memorial Hospital* (the asbestos case), *Matt & Shanna Hopewell v. Mark Shiner* (the personal injury case), and *Shanna Hopewell v. Idaho State Insurance Fund* (the workers' compensation case).

On May 7, 1992, the Idaho State Bar (ISB) filed a disciplinary complaint charging Jenkins and Stosich with professional misconduct. The complaint alleged that Jenkins and Stosich violated I.R.P.C. 1.3[1] and I.R.P.C 1.4[2] in their representation of the Hopewells in the three cases. In its findings of facts, conclusions of law, and recommendations, the hearing committee found that Jenkins and Stosich had each violated Rules 1.3, 1.4(a), and 1.4(b) of the I.R.P.C. in the representation of the Hopewells. The hearing committee recommended that Jenkins and Stosich each be suspended from the practice of law for sixty (60) days and that costs incurred by the ISB in this disciplinary proceeding be assessed against Jenkins and Stosich. Stosich filed a motion to alter or amend certain findings and recommenda-

tions, which was denied by the hearing committee. Both Stosich and Jenkins filed notices of objections to the hearing committee's findings and recommendations.

## II.

## BACKGROUND AND FACTS

Jenkins was admitted to practice law in the State of Idaho in 1976. Stosich was admitted to practice law in the State of Idaho in 1986. Jenkins was the sole shareholder of the JLO in Idaho Falls. Stosich was an associate attorney at the JLO from about June 1986 to January 1989.

### A. THE ASBESTOS CASE

In June or July 1986, Mr. Hopewell contacted Jenkins seeking representation in a matter where Mr. Hopewell was exposed to asbestos. Jenkins was already representing two of Mr. Hopewell's co-workers who had also been exposed to asbestos. Jenkins agreed to represent Mr. Hopewell in the case, and Mr. Hopewell signed a contingency fee retainer agreement with Jenkins. Jenkins wrote a letter in July 1986 to Steele Memorial Hospital on behalf of Mr. Hopewell and his co-workers, claiming that the three men had been exposed to asbestos while working for the hospital and seeking settlement of the claims. The hospital denied liability for the claims. Jenkins never informed Mr. Hopewell of the result of the letter to the hospital. Mr. Hopewell only learned of the hospital's denial of the asbestos claims in late 1986 or early 1987 from one of his co-workers.

Jenkins filed complaints on behalf of Mr. Hopewell's two co-workers, but did not file a

1. Rule 1.3 of the Idaho Rules of Professional Conduct provides:
   **Rule 1.3 Diligence.**
   A lawyer shall act with reasonable diligence and promptness in representing a client.

2. Rule 1.4 of the Idaho Rules of Professional Conduct provides:
   **Rule 1.4 Communication.**

(a) A lawyer shall keep a client reasonably informed about the status of a manner and promptly comply with reasonable requests for information.

(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

complaint for Mr. Hopewell. According to Jenkins, he did not file a complaint in Mr. Hopewell's case because Mr. Hopewell had no physical manifestations of asbestos exposure. However, Jenkins never set up a doctor's appointment for Mr. Hopewell nor did he instruct Mr. Hopewell to set up an examination himself.

The Hopewells made numerous telephone calls over the next three years inquiring about the status of the case and about when Jenkins would make arrangements for Mr. Hopewell to see a doctor. Often the Hopewells did not receive responses to their calls and letters. When they did speak with Jenkins, the Hopewells were not given any information about the status of the case.

Nothing further was done by Jenkins in pursuit of Mr. Hopewell's asbestos claim. The asbestos case was closed at the JLO in 1989, the exact month is unclear from the record. Mr. Hopewell was never sent a closing letter informing him of the conclusion of the case. Despite the closure of the asbestos file, in November 1989, Jenkins told the Hopewells that the case was without merit and that the JLO could do nothing more for them.

With respect to the asbestos case, the hearing committee concluded that Jenkins violated Rules 1.3, 1.4(a), and 1.4(b) of the I.R.P.C. because Jenkins failed to exercise due diligence in handling the case, failed to inform Mr. Hopewell of the status of the asbestos case, failed to comply with reasonable requests for information about the case, failed to explain the asbestos case to Mr. Hopewell, and failed to pursue the case for Mr. Hopewell. The hearing committee found no disciplinary violation committed by Stosich in the asbestos case.

## B. THE PERSONAL INJURY CASE

On the evening of April 5, 1986, the Hopewells were injured in an automobile accident when their car ran into a herd of cows that were on the highway. The Hopewells initially sought representation from Sherman Furey (Furey) in the matter, but Furey later withdrew from the case due to a conflict of interest. After Furey's withdrawal, the Hopewells contacted Jenkins who agreed to represent the Hopewells in this case.

After Jenkins agreed to represent the Hopewells, Mrs. Hopewell received the case files from Furey and mailed the files to Jenkins. Jenkins then told the Hopewells that Stosich would be their contact attorney on the case. Mr. Hopewell testified that he considered Stosich to be the primary attorney in the personal injury case, but that he believed that Jenkins and Stosich would be working together on the case.

Stosich was the attorney of record in the personal injury case. He prepared the complaint in the case, prepared a verification of the complaint for the Hopewells' execution, and filed the complaint. The Hopewells' previous attorney, Furey, had warned the Hopewells that the limitations period for filing the case would expire on April 5, 1988, so, in March 1988, Mrs. Hopewell called Stosich to remind him of the limitations period. Despite Mrs. Hopewell's reminder of the pending limitations date, the case was filed on April 6, 1988, one day after the statute of limitations expired. After the case was filed, no service of process was made on any of the defendants in the personal injury case. Notice of dismissal of the case was sent to Stosich at the JLO on January 4, 1989. Neither Jenkins nor Stosich responded to the notice, and the dismissal was entered on February 22, 1989. The dismissal order was sent to Stosich at the JLO. The Hopewells were not informed of the dismissal of the personal injury case by either Stosich or Jenkins.

The Hopewells made periodic inquiries to Jenkins and Stosich, both by telephone and through the mail, seeking information about the status of this case. When the Hopewells reached either Jenkins or Stosich, both lawyers gave the Hopewells incorrect information about the case. The Hopewells were told that the case had been filed and that the lawyers were awaiting a court date. The

Hopewells did not learn that the case had been dismissed until eight months after the dismissal when they called the courthouse themselves. Jenkins and Stosich failed to communicate any aspect of the case with the Hopewells, except that in November 1989 Jenkins told the Hopewells that the case was without merit and that the JLO could not do anything further on this case.

As to the personal injury case, the hearing committee concluded that Jenkins and Stosich each did not diligently pursue the case, did not reasonably inform the Hopewells of the status of the case, did not comply with reasonable requests for information, and did not explain the case to the Hopewells to permit them to make informed decisions about the case. The hearing committee found that Jenkins and Stosich each violated Rules 1.3, 1.4(a), and 1.4(b) of the I.R.P.C.

## C. WORKERS COMPENSATION CASE

In 1983, Mrs. Hopewell sustained an injury which was covered by workers' compensation insurance. Mrs. Hopewell received workers' compensation benefits for her injuries. However, after Mrs. Hopewell suffered injuries in the personal injury case, the insurance company refused pay for any more medication. Mrs. Hopewell sought representation in this matter from Jenkins in 1987 after her previous attorney withdrew from the case. The Hopewells consolidated this case with their other two cases and sent the workers' compensation case files to Stosich pursuant to Jenkins' directions. No other efforts were made by either Jenkins or Stosich in pursuit of the workers' compensation claim. As with the other two cases, in November 1989, Jenkins informed the Hopewells that this case was without merit and that nothing more would be done in the matter.

With respect to the workers' compensation case, the hearing committee concluded that Jenkins and Stosich each did not diligently pursue the case while Stosich was still a member of the JLO, and Jenkins failed to inform Mrs. Hopewell of the status of the case after Stosich left the law firm. The hearing committee found that Jenkins and Stosich each violated I.R.P.C. 1.3, 1.4(a), and 1.4(b) on the workers' compensation case.

## D. STOSICH'S DEPARTURE FROM JENKINS LAW OFFICES, CHTD.

Stosich left the JLO in January 1989. Neither Stosich nor Jenkins informed the Hopewells that Stosich was no longer with the JLO. The Hopewells were never informed of the status of their cases, if the cases had been reassigned, or if the cases went with Stosich when he left the JLO. It was not until November 1989, when the Hopewells were informed that their cases were without merit, that they also discovered Stosich was no longer with the JLO.

After discovering Stosich had left the JLO, Mrs. Hopewell contacted Stosich to ask him about the dismissal of the personal injury case. Stosich stated that he would handle their cases and attempt to get the personal injury case reinstated. Mrs. Hopewell wrote the JLO in November 1989 and requested that Jenkins send the Hopewells' files to Stosich. As of December 11, 1989, Stosich had not received the Hopewells' files from the JLO and informed the Hopewells of this fact. It appears that no further efforts were made by either Jenkins or Stosich on the Hopewell cases.

The Hopewells then went to another attorney, Stephen Hall (Hall), in an attempt to obtain some results in their cases. Hall wrote letters to both Jenkins and Stosich requesting the case files from the three Hopewell cases. Stosich initially did not respond to Hall's letter, but Stosich later informed Hall that he was awaiting a transfer of the files from Jenkins. Jenkins responded to Hall's letter by disclaiming any responsibility for the Hopewells' cases. In his letter, Jenkins stated that he spoke to Mr. Hopewell once about the asbestos case, and that he had some recollection about the workers' compensation case. Jenkins also stated that Stosich was handling the workers' compensation case and that Stosich would likely have any files on those cases. Jenkins had possession of

the three files at the JLO and eventually returned them to the Hopewells in January 1993, after the ISB interceded.

## III.

### ISSUES ON APPEAL

Jenkins' issues on appeal:

I. Whether the Idaho State Bar violated Jenkins' procedural due process rights by failing to clearly identify the individuals being charged in each action in its complaint.

II. Whether I.R.P.C. 1.3 and 1.4 are unconstitutionally vague.

III. Whether a valid disciplinary action can be considered where the case is based upon inconsistent or incomplete testimony of witnesses.

IV. Whether an attorney is required to file a frivolous claim if the attorney signs a retainer agreement with the party.

V. Whether the findings and conclusions of the hearing committee that Jenkins violated I.R.P.C. 1.3 and 1.4 are supported by the record.

Stosich's issues on appeal:

I. Whether the findings and conclusions of the hearing committee that Stosich violated I.R.P.C 1.3 and 1.4. are supported by the record.

II. Whether the sanctions recommended by the hearing committee are excessive.

## IV.

### STANDARD OF REVIEW

██ Although this Court gives great weight to the findings and conclusions of the hearing committee, the ultimate responsibility of suspending or disbarring an attorney rests with the Supreme Court. *In re Matthews*, 128 Idaho 39, 910 P.2d 153 (1994); *In re Tway*, 123 Idaho 59, 61, 844 P.2d 688, 690 (1992). This Court makes an independent review of the record to determine whether the evidence supports the recommendations and findings of the committee. *Williams v. Idaho State Bar*, 123 Idaho 367, 369, 848 P.2d 425, 427 (1993). The charges against Jenkins and Stosich must be established by clear and convincing evidence. *In re Jenkins*, 120 Idaho 379, 383, 816 P.2d 335, 339 (1991). The burden is on petitioners, Jenkins and Stosich, to show that the findings of the committee are not supported by the evidence. *Id.; Williams*, 123 Idaho at 369, 848 P.2d at 427.

## V.

### WHETHER THE IDAHO STATE BAR VIOLATED JENKINS' PROCEDURAL DUE PROCESS RIGHTS BY THE IDAHO STATE BAR'S FAILURE TO CLEARLY IDENTIFY THE INDIVIDUALS BEING CHARGED IN EACH ACTION IN ITS COMPLAINT

Jenkins argues that his procedural due process rights were violated because he was found to have violated the I.R.P.C. for conduct for which he was not specifically charged.

██ Jenkins and Stosich are entitled to due process of law in the attorney disciplinary proceedings. *Dexter v. Idaho State Bar Bd. of Comm'rs*, 116 Idaho 790, 791, 780 P.2d 112, 113 (1989) (holding that a person cannot be excluded from the practice of law "for reasons that contravene the due process or equal protection clauses of the United States Constitution"); *see also Rincover v. State Dep't of Finance*, 124 Idaho 920, 921, 866 P.2d 177, 178 (1993) (holding that one is entitled to the safeguards of due process of law before being deprived of the opportunity to practice one's profession). Notice is considered to be a critical aspect of due process, and included in the right to notice is the right to be fairly notified of the issues to be considered. *Id.; Grindstone Butte Mut. Ca-*

*nal Co. v. Idaho Power Co.,* 98 Idaho 860, 865, 574 P.2d 902, 907 (1978). An individual against whom disciplinary proceedings are brought, is entitled to have the charges against them stated in full, and may not be held accountable for misconduct not specified in the charges. *In re Baum,* 32 Idaho 676, 687, 186 P. 927, 931 (1920) (requiring charges to be specifically stated in a disbarment proceeding); *see also In re Carter,* 59 Idaho 547, 553, 86 P.2d 162, 164 (1938) (Budge J., dissenting) (expanding the holding in *Baum* to disciplinary proceedings).

█ Both Jenkins and Stosich were given adequate notice of the violations asserted against them and the facts underlying the allegations. The complaint fully stated the allegations of professional misconduct against Jenkins and Stosich and specified the conduct of Jenkins and Stosich which constituted violations of I.R.P.C. 1.3, 1.4(a), and 1.4(b). The complaint asserted that the Hopewells were not kept informed on the asbestos case and the personal injury case, that none of the three cases were diligently pursued, and that both Jenkins and Stosich failed to communicate with the Hopewells on the three cases.

Due process is provided a petitioner where a hearing is held "at which the applicant is fully advised of the claims of the opposition and of the facts which may be weighed against him, and at which he is given full opportunity to test and refute such claims and such facts, and to present his side of the issues in relation thereto...." *Application of Citizens Utils. Co.,* 82 Idaho 208, 215, 351 P.2d 487, 490 (1960). Jenkins and Stosich were fully advised of the alleged violations against them and the specific misconduct involved upon which the charges were made. The complaint of the ISB provided Jenkins and Stosich with the notice required by the safeguards of due process of law.

█ In addition to meeting the requirements of due process, the complaint of the ISB also complied with the Idaho Bar Commission Rules (I.B.C.R.). The complaint

against the defendants in an attorney discipline case must only be "specific enough to inform the defendant of the alleged misconduct." I.B.C.R. 511(a). The complaint alleged violations of I.R.P.C. 1.3., 1.4(a), and 1.4(b) and gave sufficient notice of specific misconduct involved.

## VI.

## WHETHER I.R.P.C. 1.3 AND 1.4 ARE UNCONSTITUTIONALLY VAGUE

Jenkins argues that the requirements of acting "with reasonable diligence and promptness," I.R.P.C. 1.3, and keeping a client "reasonably informed," and explaining a "matter to the extent reasonably necessary," I.R.P.C. 1.4(a), (b), are unconstitutionally vague.

█ A statute is unconstitutionally vague "when its language does not convey sufficiently definite warnings as to the proscribed conduct, and its language is such that [persons] of common intelligence must necessarily guess at its meaning." *Krueger v. Board of Professional Discipline,* 122 Idaho 577, 580, 836 P.2d 523, 526 (1992), *cert. denied* 507 U.S. 918, 113 S.Ct. 1277, 122 L.Ed.2d 672 (1993) (quoting *Wyckoff v. Board of County Comm'rs of Ada County,* 101 Idaho 12, 15, 607 P.2d 1066, 1069 (1980)). This standard has been held to apply to rules and regulations adopted by the Board of Professional Engineers for the revocation, suspension, or discipline of engineers. *H & V Eng'g v. Idaho State Board of Professional Engrs. & Land Surveyors,* 113 Idaho 646, 649, 747 P.2d 55, 58 (1987). We apply this standard to the determination of whether the I.R.P.C. 1.3 and 1.4 are unconstitutionally vague.

█ I.R.P.C. 1.3 requires a lawyer to act with reasonable diligence and promptness in representing a client. The comments to the rule explain the meaning of the rule and provide examples to clarify the rule. The comments define "reasonable diligence and promptness" as pursuing a matter for a client despite opposition, obstruction, or per-

sonal inconvenience, acting with commitment and dedication to the interests of a client, acting with a zeal in advocacy on the clients behalf, and avoiding procrastination in the representation of a client. These refinements on the rule provide ample notice of the prohibited conduct such that persons can be warned of what conduct will constitute a violation of I.R.P.C. 1.3.

▆▆▆ I.R.P.C. 1.4(a) provides that a lawyer "shall keep a client reasonably informed about the status of a manner and promptly comply with reasonable requests for information." I.R.P.C. 1.4(b) provides that a lawyer "shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation." The comments to I.R.P.C. 1.4, like those for I.R.P.C. 1.3, provide explanations and examples to clarify and further define the rules. Keeping a client "reasonably informed" is defined as giving the client sufficient information to participate intelligently in the case, providing the client with relevant facts, and informing the client of communications from another party, including settlement offers. The adequacy of communication, according to the comments to I.R.P.C. 1.4, depends on the kind of assistance involved, but may include explaining general case strategies and prospects of success. The rule and the comments provide sufficient warning of the types of conduct that constitute a violation of the provision.

The I.R.P.C. 1.3 and 1.4 and their comments provide adequate warning on their face of the conduct which is prohibited such that the rules, as applied to petitioners, adequately inform them of the standards by which they are to be judged. I.R.P.C. 1.3 and 1.4 are not unconstitutionally vague.

## VII.

## WHETHER A VALID DISCIPLINARY ACTION CAN BE CONSIDERED WHERE THE CASE IS BASED UPON INCONSISTENT OR INCOMPLETE TESTIMONY OF WITNESSES

▆▆▆ Jenkins argues that the changes in the Hopewells' testimony and admissions that other statements were erroneous, preclude the acceptance of their testimony and the basis of the complaint. Jenkins' argument centers around statements by the Hopewells that were contradicted by the Hopewells' subsequent testimony. Jenkins argues that these erroneous and inconsistent statements affect the credibility of the witness and that their statements cannot meet the clear and convincing standard required in an attorney discipline case. We disagree.

The Hopewells admitted to inconsistencies in their prior statements either based on poor recollection of the facts or based on more recent information. Not all statements by the witnesses were found to be untrue. The admitted inconsistencies do not require this Court to discount all of the witnesses' testimony and do not preclude the basis for the complaint. The hearing committee and this Court are entitled to make credibility determinations of the witnesses. There has been no admission of intentional falsehoods in this case, and the admitted inconsistencies do not preclude the maintenance of this action.

## VIII.

## WHETHER AN ATTORNEY IS REQUIRED TO FILE A FRIVOLOUS CLAIM IF THE ATTORNEY SIGNS A RETAINER

▆▆▆ Jenkins argues that the asbestos case was without merit and that he could not have filed a lawsuit in the matter because a lawsuit would have been frivolous. Jenkins mischaracterizes his responsibilities in representing a client. There has been no assertion or indication by this Court or by any party that Jenkins was required to file a frivolous lawsuit. Jenkins was required to keep Mr. Hopewell informed about the status of the case, to respond to Mr. Hopewell's requests for information, and to provide sufficient information to Mr. Hopewell such that he could make an intelligent decision about the continuation of the matter. I.R.P.C. 1.3, 1.4. Jenkins failed to do all of these things.

If Jenkins believed the asbestos case to be without merit, then Jenkins had the duty and responsibility to inform his client of this fact. It was improper for Jenkins to not pursue the action and keep his client uninformed of this fact. I.R.P.C. 1.4.

## IX.

## WHETHER THE FINDINGS AND CONCLUSIONS OF THE HEARING COMMITTEE THAT JENKINS VIOLATED I.R.P.C 1.3 AND 1.4 ARE SUPPORTED BY THE RECORD

Jenkins argues that he should not be held responsible for the acts of Stosich which violated I.R.P.C. 1.3 and 1.4. Jenkins misperceives the findings, conclusions, and recommendations of the hearing committee. The hearing committee considered the actions of Jenkins which constituted violations of I.R.P.C. 1.3 and 1.4 individually and separately from those of Stosich. The hearing committee found Jenkins individually responsible for his own acts and those individual acts were found by the hearing committee to be violations of I.R.P.C. 1.3 and 1.4.

The hearing committee concluded, based on its findings, that Jenkins violated I.R.P.C. 1.3, 1.4(a), and 1.4(b) in the handling of the Hopewells' three cases. After an independent review of the record and all evidence presented, we hold that the record supports the findings and conclusions of the hearing committee by clear and convincing evidence.

■ In the asbestos case, Jenkins assumed responsibility for the case when he signed the retainer agreement with Mr. Hopewell. Jenkins failed to diligently pursue the case and made no effort to resolve the matter for Mr. Hopewell. Jenkins contends that he did not act in the case either because he was waiting for physical symptoms to manifest themselves or because the case was without merit. In either event, Jenkins failed to communicate to Mr. Hopewell that the case could not proceed without evidence of injury from the asbestos expo-

sure or failed to inform Mr. Hopewell that the matter would not be pursued because it was without merit. Additionally, Jenkins failed to respond to Mr. Hopewells' reasonable requests for information and failed to communicate to Mr. Hopewell that the matter was concluded when the case closed in 1989. Jenkins' conduct violated I.R.P.C. 1.3., 1.4(a), and 1.4(b).

■ In the personal injury case, Jenkins was initially contacted by the Hopewells, was mailed the case files, and had a number of conversations with the Hopewells concerning the case. Jenkins failed to make any effort to pursue the case, failed to communicate the status of the case to the Hopewells, and failed to respond to the Hopewells' reasonable requests for information about the case. Jenkins also failed to communicate to the Hopewells that the case had been dismissed and failed to inform the Hopewells in 1989 that Stosich was no longer with the firm. Jenkins made no effort to ensure that the Hopewells' case was being handled by someone after Stosich left the firm. Jenkins also failed to turn over the Hopewells' case files when the Hopewells requested them. Jenkins took no action in the case except to inform the Hopewells, two years after Jenkins accepted the case, that the case was without merit.

Jenkins' conduct in the personal injury case violated I.R.P.C. 1.3, 1.4(a), and 1.4(b).

■ The workers' compensation case was completely neglected by Jenkins and Stosich. Jenkins was initially contacted by the Hopewells in the workers' compensation case. Jenkins also received phone calls from the Hopewells inquiring about the case. Jenkins then told the Hopewells that Stosich was working on the matter and that they should contact him for information. Jenkins did not respond to the Hopewells' numerous requests for information about the case. After Stosich left the firm in January 1989, Jenkins did not inform the Hopewells of Stosich's departure or inform them of any reassignment of their cases. Jenkins' only action in

the case was to tell the Hopewells in November 1989 that the case was without merit. Jenkins provided no information about the merits or status of the case, failed to respond to the Hopewells' requests for information, and failed to turn over the Hopewells' case files when they requested them. Jenkins' conduct violated Rules 1.3, 1.4(a), and 1.4(b) of the I.R.P.C.

We hold that clear and convincing evidence support the hearing committee's conclusion that Jenkins violated I.R.P.C. 1.3, 1.4(a), and 1.4(b) in the representation of the Hopewells' three cases.

## X.

### WHETHER THE FINDINGS AND CONCLUSIONS OF THE HEARING COMMITTEE THAT STOSICH VIOLATED I.R.P.C 1.3 AND 1.4 ARE SUPPORTED BY THE RECORD

██ Stosich argues that the decision of the hearing committee should be reversed due to the committee's failure to acknowledge the standard of proof in its finding of facts as clear and convincing. The hearing committee in its findings of fact did not state the standard of review it applied. However, this court is to make its own independent review of the record to determine if the record supports the findings by clear and convincing evidence. *In re Tway,* 123 Idaho at 61, 844 P.2d at 690. After thorough review of the record, we conclude that the findings and conclusions of the hearing committee are supported by clear and convincing evidence.

██ In the asbestos case, the hearing committee concluded that Stosich committed no disciplinary violations. Our review of the record reveals that Stosich's only participation in the asbestos case was at the direction of Jenkins. He took the depositions of the parties and performed other minor tasks but had no responsibility in the case. We agree with the conclusion of the hearing committee that Stosich did not violate the I.R.P.C. in the asbestos case.

██ In the personal injury case, the hearing committee concluded that Stosich violated I.R.P.C. 1.3, 1.4(a), and 1.4(b) by not diligently pursuing the case, by failing to reasonably inform the Hopewells of the status of the case, and by failing to comply with the Hopewells' requests for information. Based on an independent review of the record, we hold that the record supports the findings and conclusions of the committee that Stosich violated I.R.P.C. 1.3, 1.4(a), and 1.4(b) in the representation of the Hopewells in the personal injury case.

Stosich was the attorney of record in the case. He filed the complaint in the case one day after the statute of limitations expired. Stosich failed to exercise diligence in pursuit of the personal injury case when he missed the limitations date, especially after his client reminded him of the date on which the statute of limitations expired. After the case was filed, Stosich failed to communicate the status of the case to the Hopewells or inform them that the case had been dismissed. Stosich did not respond to the Hopewells' calls and correspondence requesting information about the case. Stosich also failed to inform the Hopewells that he left the firm in January 1989 and failed to give them notice either that he was taking the cases with him or that the cases were being reassigned to another attorney. Stosich failed to follow up on the personal injury case and did not provide the Hopewells with information on the case. Additionally, after Stosich left the JLO, he failed to diligently pursue the case after he told Mrs. Hopewell that he would obtain the case files and would try to reinstate the personal injury case. Other than two letters sent, one to the JLO and one to Mrs. Hopewell, Stosich made no effort to pursue the Hopewells' matters. Stosich's conduct violated I.R.P.C. 1.3, 1.4(a), and 1.4(b).

██ In the workers' compensation case, the hearing committee concluded that Stosich did not diligently pursue the case while he was an associate at the JLO and that he violated I.R.P.C. 1.3, 1.4(a), and 1.4(b). From our review of the record we conclude

that clear and convincing evidence supports the conclusion that Stosich violated I.R.P.C 1.3, 1.4(a), and 1.4(b) in the workers' compensation case.

The workers' compensation case was completely neglected by Stosich. Jenkins was initially contacted in this case, and the Hopewells were informed that Stosich would be handling this case. The Hopewells sent the case files to Stosich, yet no action was taken in this case. Stosich did not respond to the Hopewells' numerous requests for information about the case, nor did Stosich keep the Hopewells informed about the matter. Additionally, Stosich assured Mrs. Hopewell that he would try to get the case files on this case from the JLO and pursue the matter. Other than writing two letters, Stosich made no effort to pursue the case. Stosich failed to exercise diligence in obtaining the case files and in pursuing the matter. His conduct violated I.R.P.C. 1.3, 1.4(a), and 1.4(b).

## XI.

## WHETHER THE SANCTIONS RECOMMENDED BY THE HEARING COMMITTEE ARE EXCESSIVE

Stosich argues that the recommended sanctions of the hearing committee are excessive. We disagree.

The purposes of suspension and disbarment proceedings is to protect the public and the legal profession, to preserve confidence in the judicial system, the function of the bar association, and the profession of law, and to encourage public participation in the disciplinary process. *Idaho State Bar v. Matthews*, 128 Idaho 39, 910 P.2d 153 (1994); *In re Tway*, 123 Idaho 59, 61, 844 P.2d 688, 690 (1992). Attorney discipline cases should be approached on a case-by-case basis, taking into consideration the various factors and circumstances of each case.

Jenkins and Stosich each committed disciplinary violations of the I.R.P.C. by their individual misconduct. After weighing the goals of disciplinary proceeding and the specific circumstances of the case with respect to Jenkins' conduct and with respect to Stosich's conduct, we conclude that the recommended sanction of sixty (60) days suspension for Jenkins and for Stosich from the practice of law is reasonable and not excessive. We adopt the recommended sanctions of the hearing committee for Jenkins and for Stosich.

## XII.

## CONCLUSION

■ Based on an independent review of the record, we conclude that the record supports by clear and convincing evidence the conclusion that Jenkins committed disciplinary violations of the Idaho Rules of Professional Conduct. Jenkins failed to diligently pursue the Hopewells' three cases, failed to communicate information about the cases to the Hopewells, and failed to keep the Hopewells reasonably informed about the status of their cases. Based on Jenkins' misconduct in violation of I.R.P.C. 1.3, 1.4(a), and 1.4(b), this Court adopts the recommended sanctions of the hearing committee that Jenkins be suspended from the practice of law for sixty (60) days.

■ This Court concludes that the evidence in the record supports the conclusion by clear and convincing evidence that Stosich committed disciplinary violations of the Idaho Rules of Professional Conduct. Stosich failed to exercise diligence in pursuit of the Hopewells' personal injury case and their workers' compensation case prior to his leaving the JLO, and after leaving the JLO, Stosich failed to diligently pursue the personal injury case and the workers' compensation case, after he asserted to Mrs. Hopewell he would do so. Stosich failed to keep the Hopewells reasonably informed about the status of their cases and failed to respond to their reasonable requests for information about their cases. Based on Stosich's misconduct in violation of I.R.P.C. 1.3, 1.4(a), and 1.4(b), this Court adopts the recom-

mended sanctions of the hearing committee that Stosich be suspended from the practice of law for sixty (60) days.

Costs are awarded to Respondent, Idaho State Bar.

JOHNSON, TROUT and SILAK, JJ., and TRANSTRUM, Justice Pro Tem, concur.