925 P.2d 1113

In the Matter of John R. Topp, Attorney at Law.

IDAHO STATE BAR, Plaintiff–Respondent,

v.

John R. TOPP, Defendant–Petitioner.

No. 21760.

Supreme Court of Idaho, Boise, April 1996 Term.

Aug. 13, 1996.

Rehearing Denied Oct. 4, 1996.

John R. Topp, Sandpoint; George A. Critchlow (argued), Spokane, WA, for defendant–petitioner.

Michael J. Oths, Boise, for plaintiff–respondent.

TROUT, Justice.

This is an appeal from a decision rendered by a Hearing Committee of the Professional Conduct Board of the Idaho State Bar. The Hearing Committee has recommended assessing a public reprimand against the appellant, John R. Topp, for his violation of I.R.P.C. 8.2(a).

## I.

## BACKGROUND

At some point prior to October, 1993, Bonner County filed a request in district court for "judicial confirmation" of a proposed $4.1 million expenditure. This money was intended to be used to close three county landfills and to construct a new transfer station to haul garbage out of state. The County hoped for a judicial declaration that this was an "ordinary and necessary" expense, thereby allowing it to raise the funds without voter approval.

On October 4, 1993, Judge Michaud heard oral argument on the judicial confirmation request. This proceeding was conducted at a time when there was a "political frenzy" and great public debate regarding property tax issues in Bonner County, including an effort to recall certain elected officials. In an oral decision rendered immediately after the close of argument, Judge Michaud denied the County's request. He also made a written transcript of the decision available to the public within minutes of the decision.

Topp, who was a part-time county attorney (but who was not involved in the confirmation proceeding) was present during the proceeding and was interviewed by members of the local media. Although the exact content of his remarks is in dispute, he at least suggested to the media that Judge Michaud's decision was motivated by political concerns. Topp's statements were included in a newspaper article and a radio news broadcast, and are the entire focus of this case.

## II.

## PROCEDURAL HISTORY

I.R.P.C. 8.2(a) provides in relevant part: "A lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge...." The Idaho State Bar (ISB) filed a complaint against Topp on March 22, 1994, claiming a violation of this rule. Topp filed a motion to dismiss or for summary judgment on August 30, 1994, contending that Rule 8.2(a) is violative of his rights under the First Amendment to the United States Constitution and under Idaho Const. art. 1, § 9.[1]

A hearing on Topp's motion was held on October 11, 1994. During this hearing, the parties agreed that the case could be decided on stipulated facts, eliminating the need for an evidentiary hearing. On November 14, 1994, the Committee denied Topp's motion, determined that he had violated Rule 8.2(a), and recommended that he be assessed a public reprimand.

## III.

## STANDARD OF REVIEW

In attorney discipline cases, the burden is on the ISB to establish the alleged

---

1. Topp has made no argument on appeal that the Idaho Constitution provides more expansive rights than those provided by the federal constitution in this area, or that those rights have been violated.

misconduct by clear and convincing evidence. *E.g., Matter of Jenkins,* 120 Idaho 379, 382–84, 816 P.2d 335, 338–40 (1991). *See also* I.B.C.R. 522(f). "Clear and convincing" evidence refers to "a degree of proof greater than a mere preponderance." *Jenkins,* 120 Idaho at 383, 816 P.2d at 339 (citing *Molyneux v. Twin Falls Canal Co.,* 54 Idaho 619, 35 P.2d 651 (1934)). On appeal, although we give great weight to the findings of the Board, we will make an independent review of the record to determine whether the findings are supported. *Id.* at 383–84, 816 P.2d at 339–40.

## IV.

### WHETHER TOPP'S REMARKS WERE STATEMENTS OF "OPINION" PROTECTED BY THE FIRST AMENDMENT AND OUTSIDE THE SCOPE OF I.R.P.C. 8.2(a)

■ Statements impugning the integrity of a judge "may not be punished unless they are capable of being proved true or false; statements of opinion are protected by the First Amendment unless they 'imply a false assertion of fact.'" *Standing Comm. on Discipline v. Yagman,* 55 F.3d 1430, 1438 (9th Cir.1995) (citing *Milkovich v. Lorain Journal Co.,* 497 U.S. 1, 19, 110 S.Ct. 2695, 2706, 111 L.Ed.2d 1 (1990); *Lewis v. Time, Inc.,* 710 F.2d 549, 555 (9th Cir.1983); Restatement (Second) of Torts § 566 (1977)). Topp contends that his comments to the media were merely statements of opinion which must be afforded constitutional protection.

■ In determining whether a statement is an assertion of fact or of constitutionally protected opinion, "[t]he important consideration ... is not whether the particular statement fits into one category or another, but whether the particular article provided sufficient information upon which the reader could make an independent judgment for himself." *Wiemer v. Rankin,* 117 Idaho 566, 572, 790 P.2d 347, 353 (1990) (quoting Herbert W. Titus, *Statement of Fact Versus Statement of Opinion—A Spurious Dispute in Fair Comment,* 15 Vand.L.Rev. 1203, 1216 (1962)). Thus, even statements which appear to be opinion will nonetheless be treated, for constitutional purposes, as assertions of fact if the speaker implies that he is privy to undisclosed facts and that he has "private, first-hand knowledge which substantiate[s] the assertions made." *Id.* When such statements are made, the audience is not given sufficient information upon which to form an independent judgment; therefore, the expression of opinion is as damaging as an assertion of fact. *Id.* at 571–72, 790 P.2d at 352–53 (citations omitted).

■ In this case, there is some dispute as to exactly what was said to the media. Topp contends that he merely offered his opinion in response to a newspaper reporter's question as to whether it was possible that Judge Michaud's decision could have been politically motivated. There is testimony in the record that Topp's response was altered by the newspaper to make it appear that he "charged" that the decision was politically motivated when, in fact, he only agreed that it was possible. However, Topp does not dispute the fact that the radio news report contained a fair statement of his actual comments.

The transcript of the radio report states: "County attorney John Topp is critical of [Judge Michaud's] ruling. District Judge Craig Kosonen recently granted a similar petition by Shoshone County ... Topp says there's no difference between the 2–cases, except Judge Kosonen ... quoting directly ... 'wasn't worried about the political ramifications.'" This statement clearly implies that Judge Michaud *was* worried about the political ramifications and that that was the reason his decision ~~differed from that~~ reached by Judge Kosonen. This statement insinuates that Topp was privy to some facts about the two cases and about the motivation of Judge Kosonen in rendering his decision. Because these facts were not revealed, Topp's audience was unable to draw its own conclusions as to Judge Michaud's motivations. Therefore, even assuming the newspaper misstated what Topp said, we conclude that the comments included in the radio news report went beyond the realm of pure "opinion."

# V.

## WHETHER THE COMMITTEE ERRED IN CONCLUDING THAT TOPP VIOLATED I.R.P.C. 8.2(a)

### A. Framework

Topp contends that, even if his statements are not deemed constitutionally protected "opinions," they are still entitled to First Amendment protection since they were clearly political in nature. He asserts that in order to sanction an attorney under Rule 8.2(a), the statement in question must be tested under the standard articulated by the United States Supreme Court in *New York Times v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). Thus, according to Topp, the ISB must prove that the statement was false and that it was made with actual (subjective) malice, *i.e.*, that the particular person uttering the remark did so with reckless disregard for its falsity. For the reasons set forth below, we do not agree that this is the appropriate constitutional standard to apply in this type of case.

The ISB contends that Topp should be sanctioned in order to protect the integrity of the judicial system. In First Amendment cases involving important countervailing interests, the federal courts have balanced these interests against the speaker's interests in an attempt to accommodate both. *See Gentile v. State Bar of Nevada*, 501 U.S. 1030, 111 S.Ct. 2720, 115 L.Ed.2d 888 (1991) (balancing the State's interest in assuring fair trials against free speech interest of attorneys). The Ninth Circuit has taken this approach in cases involving Rule 8.2(a), and we believe it is warranted here.

In *United States Dist. Court v. Sandlin*, 12 F.3d 861 (9th Cir.1993), a case involving application of a rule identical to I.R.P.C. 8.2(a), the court recognized the competing interests identified above. It held that, in light of the compelling state interests served by Rule 8.2(a), the rule should be read to impose an *objective* malice standard on attorneys. *Id.* at 867. According to that court, in considering the "reckless disregard" prong of Rule 8.2(a), the standard applied is "what the reasonable attorney, considered in light of all his professional functions, would do in the same or similar circumstances." *Id.* The *Sandlin* analysis was further refined in *Standing Committee on Discipline v. Yagman*, 55 F.3d 1430 (9th Cir.1995), where the court identified the additional requirement that the disciplinary body establish that the attorney's statements were false. *Id.* at 1438. This formulation strikes a reasonable balance between the right of free speech and the State's legitimate interest in preserving the integrity of its judicial system. The speaker's interest is accommodated by the requirement that the State prove the statement was false and that the speaker lacked a reasonable basis for the statement. The State's interest is accommodated by the fact that it need not prove subjective malice.

### B. Application

We conclude that the ISB has established, for purposes of this case, that Topp's statements as to Judge Michaud's motivations were false.[2] The parties stipulated that Judge Michaud would testify that his decision in the judicial confirmation proceeding was not politically motivated. Although Topp makes much of the fact that the parties did not stipulate to the truth of this testimony, we are aware of no requirement that parties must stipulate to the truth of evidence in the record before a court may consider that evidence. The stipulated testimony of Judge Michaud is not controverted, and the parties' failure to stipulate as to the truth of that evidence is irrelevant.

With regard to the second element of the analysis, there is no contention that

---

2. Even though the ISB concedes that actual falsity is an essential element of its case, it failed to allege in its complaint that Topp's statements were false. However, we do not agree with Topp's assertion that this is a fatal defect. It is true that the content of pleadings in disciplinary cases must comport with I.R.C.P. 10. I.B.C.R. 522(h). However, I.B.C.R. 511(a) sets its own standard as to the sufficiency of allegations in a complaint: the allegations "must be specific enough to inform the defendant of the alleged misconduct." The allegations in the complaint filed in this case are clearly sufficient to inform Topp that, due to his statements to the media, he is alleged to have violated I.R.P.C. 8.2(a).

Topp had actual knowledge that his statement was false. Thus, the question is whether Topp was "objectively reckless" in making that statement to the media. The bases asserted by Topp as support for his comments are as follows: (1) there was a political frenzy in Bonner County with regard to property tax issues; (2) the immediate release of the decision could lend support to an inference that the case was decided prior to argument and that Judge Michaud was concerned with disseminating that decision to the public quickly; and (3) another district judge in a similar case had reached a different decision. We conclude that a reasonable attorney, in considering these facts, would not have made the statement in question. Because Topp's statement necessarily implied that Judge Michaud based his decision on completely irrelevant and improper considerations, it impugned his integrity. Therefore, we hold that the ISB established a violation of I.R.P.C. 8.2(a) and that a public reprimand is the appropriate sanction for that violation.

## VI.

## CONCLUSION

The hearing committee's recommendation that Topp be assessed a public reprimand is adopted.

McDEVITT, C.J., and JOHNSON and SILAK, JJ., concur.

SCHROEDER, Justice, dissenting.

I would like very much to agree with the conclusion of the Court in this case. Some public speech has a purpose; some does not. There is no discernable purpose in the comments that were made by Mr. Topp. However, that is not the standard for determining if disciplinary action should take place.

The Court correctly capsulizes the issue in its comment in Section IV: "Statements impugning the integrity of a judge 'may not be punished unless they are capable of being proved true or false; statements of opinion are protected by the First Amendment unless they "imply a false assertion of fact." ' "

The analysis of what constitutes an opinion and what implies a fact can be complex. However, underlying any analysis is the commonly understood reality that it is often impossible to discern what is in another person's mind and what subjective motivations exist within that person's mind. Topp could not know what was in Judge Michaud's mind or what was in Judge Kosonen's mind. Anybody reviewing Topp's comments would understand that. Topp's comments dealt with a subject matter that he could not know—the internal motivation of a judge making a decision. Two consequences flow from this: the first a matter of social decency; the other a principle of constitutional law. Since Topp could not know what was in Judge Michaud's mind, it was a matter of social indecency to impugn the judge's character by speculation. However, a reader or listener with common sense would understand that the comments were statements of opinion. That understanding of the nature of the comments as an opinion cloaks Mr. Topp in the protection afforded by the First Amendment.

It is easier to defend speech that has a social purpose than to defend speech that seems to have no point except to degrade another person. However, that is not the line the First Amendment draws. The noble purposes for the constitutional protection of speech have been set forth numerous times with great eloquence. Attempting a new flourish would add nothing to the wisdom inherent in the protection of speech in our constitutional structure. The speech at issue in this case falls within that circle of protection.